**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**POWERTRAIN, INC.**                                                                 **PLAINTIFF**

v.                                                    **Cause No: 1:11-cv-00105-GHD-DAS**

**JOYCE MA and BEST MACHINERY
& ELECTRICAL, INC.**                                     **DEFENDANTS**

**JOYCE MA**                                              **THIRD PARTY PLAINTIFF**

v.

**WILLIAM SHAWN and
SHAWNCOULSON, LLP**                              **THIRD PARTY DEFENDANTS**

**MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

**I. <u>INTRODUCTION</u>**

In denying the Third Party Defendants' original Motion to Dismiss and granting Third Party Ma ("Ma") leave to amend her complaint, this Court admonished Ma by warning, "[t]he Court finds that leave to amend should be granted to the Third Party Plaintiff in this case, but the Court cautions that to survive a motion to dismiss, the Third-Party Plaintiff's complaint must allege 'enough facts to state a claim for relief that is plausible on its face.'" Order Denying Third-Party Defendant's Motion to Dismiss and Granting Leave to File Amended Third-Party Complaint at 2 [Doc No. 111] (filed September 24, 2013) [citations omitted]. Ma's amended complaint fails to meet this Court's clear direction.

The gravamen of this motion is simple: all the claims asserted in Joyce Ma's third party complaint accrued no later than September 20, 2005,[1] yet the earliest assertion of the claims

---

[1] This was the date independent counsel appeared for her in the underlying litigation. *See* Application for Admission Pro Hac Vice under Uniform Local Rule 83.1(A)(2) at 2 in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 214] (N.D. Miss.) (filed

against William Shawn and ShawnCoulson, LLP was on May 7, 2012, when Joyce Ma filed her first Third Party Complaint against those parties.[2] Accordingly, Mississippi's three-year statute of limitations for attorney malpractice claims had long since run before suit was filed.

A careful reading of Joyce Ma's claim against William Shawn and ShawnCoulson discloses only three time-barred assertions of attorney malpractice for alleged acts or omissions on May 2, 2005, when Ma was a deponent in an earlier, related case involving Powertrain's suit against American Honda over Powertrain's importation of engines, just short of eight years before Ma filed this action. In her Amended Third Party Complaint,[3] Ma now asserts the Third Party Defendants breached duties to her in that earlier action by: 1. Failing to deal with a conflict between her and Powertrain; 2. failing to document a purported do-no-harm agreement by Powertrain's principal Oneal Woods made just before the deposition; and 3. failing to preserve documents (what documents she does not hint at) involving her representation at the 2005 deposition.

Ma now alleges William Shawn agreed to represent her in the May 2, 2005 American Honda case deposition.[4] Almost immediately thereafter, Honda sued Ma, and she retained counsel. Even accepting the allegations of her complaint as true, Ma certainly knew or should have known of her claims, at a minimum, when she retained her own lawyer in September 2005 in the Honda litigation, just short of eight years before she filed this action. Any such claims are therefore clearly time-barred.

---

September 20, 2005) (Exhibit A to the Motion to Dismiss); *see infra* at 13 (discussing accrual date)

[2]Defendant Joyce Ma's First Amended Answer, Affirmative Defenses, Counterclaims, and Crossclaims (Doc. No. 34) (filed May7, 2012).

[3]First Amended Third Party Complaint [Doc. No. 42] (filed July 3, 2012) ("Ma Amended Third Party Complaint").

## II. STATEMENT OF FACTS

**A. <u>The Allegations of the Amended Third Party Complaint Relate to Events in 2005</u>**

Ma begins by alleging that Powertrain filed a lawsuit against American Honda on December 19, 2003. Defendant Joyce Ma's First Amended Third Party Complaint ¶5 at 3 [Doc. No. 114] (filed October 18, 2013) ("Ma Amended Third Party Complaint"). "Shortly after" this, she alleges, the owner of Powertrain told Joyce Ma he needed her help and "offered to Ma that Powertrain would do no harm to Ma and represent Ma if Honda were to sue Best and Best would refuse to pay Ma's attorneys fees." *Id.* ¶6-7 at 3. Ma then alleges:

> 9. Thereafter, *inter alia,* when Honda deposed Ma on May 2, 2005, William H. Shawn, Esq. ("Shawn"), the lead attorney representing Powertrain et al. in the *Honda* case, prepared Ma for and represented Ma in the deposition of Ma by Honda.
>
> 10. While representing Ma and Powertrain, Shawn reassured Ma that Powertrain would do no harm to Ma. However, Shawn failed to execute an implied promise, including, but not limited to, putting the terms in writing. Shawn acted as the attorney and agent for Powertrain when making this representation to Ma. Further, any efforts by Shawn to form the contract between Powertrain and Ma were done by Shawn as the attorney or agent of Powertrain.

*Id.* at 3-4. Later, Ma alleges a failure to disclose this alleged conflict of interest. *Id.* ¶20 at 5. Significantly, Ma alleges that Shawn spoke for Powertrain as its agent.

Ma alleges that the conflict of interest was "clear and obvious" at the May 2, 2005 deposition. She insists:

> 22. When the Third Party Defendants offered to represent Powertrain in the *Honda* case, they knew or should have known the clear and obvious conflict of interest….

*Id.* at 6. With these allegations, Ma has affirmatively plead that:

---

[4]This allegation is misleading in several ways, but accepted here only under the Fed.R.Civ.Pro. 12(b)(6) standard.

3

- **Any agreement "to do no harm" (including an agreement to represent Ma) by Powertrain was made before May 2, 2005.**

- **Any conflict of interest was "clear and obvious" on May 2, 2005.**

- **Joyce Ma was fully aware that Shawn spoke (also on May 2, 2005) for Powertrain as its lawyer in discussing any purported agreement between her and Powertrain and knew Shawn was an agent of Powertrain.**

Ma then alleges Mr. Shawn failed to assure the documentation of the oral "do no harm" contract, including, but not limited to, putting said contract in writing. *Id.* ¶18, 19 at 5. She also claims:

> 13. In or about March 2012, Ma contacted Shawn to request information concerning the *Honda* case. Shawn stated that he had turned over all the documents to Oneal Wood after he won the lawsuit against Oneal Wood for attorney's fees…

*Id.* at 4. Ma also alleges William Shawn "turn[ed] over all of said records to one client only, Powertrain." *Id.* ¶26 at 7. Significantly, Ma makes no allegation about what documents that Ma may have sought, and no allegation that William Shawn's transmission of the documents to Powertrain caused her any damage of any kind.

Ma's Amended Third Party Complaint then suggests Powertrain's filing of this suit was the date of her injury. She thus alleges the failure to document the purported agreement "caus[ed], at least partially, the breach of the contract" when Powertrain sued Ma on May 5, 2011. *Id.* ¶18 at 5. She further alleges that the conflict of interest "was left unresolved until, at least, May 5, 2011." *Id.* ¶22 at 6. Finally, Ma claims William Shawn's alleged denial of representation in 2012, "exposed their conflicts of interest" on that date. *Id.* ¶23 at 6.

Ma's three alleged breaches by William Shawn and his firm are organized into seven overlapping and confusing counts or claims. She charges the alleged failure to confirm the "do no harm" agreement in writing, and disclose the alleged conflict of interest are breaches of the duty of loyalty. *Id.* ¶18-20 at 5-6 (Count One). She simultaneously raises conflict of interest as a

4

second claim. *Id.* ¶21-23 at 6 (Count Two). She also claims the alleged failure to maintain her unspecified records and to document the alleged agreement are a breach of fiduciary duties. *Id.* ¶24-26 at 7 (Count Three). The failure to put the alleged agreement in writing, Ma charges, is a negligent misrepresentation, although she fails to utter any allegation of any representation, or a statement of when or where any such alleged statements were made. *Id.* ¶27-28 at 7-8 (Count Four). Ma further contends that the breach of fiduciary relation is somehow "Constructive Fraud," without any explanation of how that might have been. *Id.* ¶29-30 at 8 (Count Five) Finally, Ma claims that all her alleged breaches constitute negligence and legal malpractice. *Id.* ¶31-36 at 8-9 (Counts Six and Seven).

### B. The American Honda Case Context for Ma's Claims

To understand this litigation, it is important to understand the prior litigation in this Court with related subject matter. The two lawsuits are quite distinct. The first involves whether Powertrain (and Joyce Ma) were selling motors that unfairly copied Honda motors. A jury held they did, and judgments followed. The second (this action) involves whether Joyce Ma and Best Machinery sold motors to Powertrain that failed to comply with E.P.A. regulations.

Joyce Ma's claim against William Shawn and ShawnCoulson, LLP is they somehow committed malpractice toward her in the prior case before this Court, *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668. *See* Ma Amended Third Party Complaint ¶5-7 at 3 (alleging this).[5] She now alleges Powertrain is suing her and Best Machinery for selling to Powertrain Chinese motors that failed to meet E.P.A. standards. First Amended Complaint ¶29-30 at 6 (Doc. No. 83) (filed January 22, 2013). By contrast, in the prior action, Powertrain sued

---

[5]Because they are part of the files of this Court, this Court is authorized to take judicial notice of the pleadings and consider them in resolving this Motion to Dismiss. *See infra* at 11-12 (citing cases allowing consideration of court files as a part of resolving a motion to dismiss under Fed.R.Civ.Pro. 12(b)(6)).

5

Honda over whether, as American Honda claimed, Powertrain motors illegally copied Honda's trade dress.

The prior case was decided in two stages. In the first, Powertrain was adjudged to have infringed Honda's trade dress on the motors, and Joyce Ma was adjudged to have contributorily infringed on Honda's trade dress on the motors. Order and Judgment at 4, in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 1163] (N.D. Miss.) (filed Aug. 8, 2007) (Exhibit B to the Motion to Dismiss). In the second stage, claims against Ma were dismissed with prejudice. Agreed Order of Dismissal with Prejudice, in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 1258] (N.D. Miss.) (filed April 8, 2008) (Exhibit C to the Motion to Dismiss).

A comparison between her claims in the two lawsuits reveals Ma's pleadings are duplicitous, among other things, on her interactions with Powertrain. For example, in her answer in this case, she denies ever having a contract with Powertrain:

> 59. Ma has never formed any contract with Powertrain.
> 60. All of Powertrain's claims are barred because there has been no contract between Ma and Powertrain.[6]

In contrast to her foregoing denial, one of Ma's claimed three breaches against William Shawn in her Third Party Complaint is he failed to document an agreement she made with Powertrain through its owner, Oneal Wood. In fact, Ma even alleges offer and acceptance of this alleged agreement. Ma Third Amended Party Complaint at 11.

Further, in her answer in this case, when confronted with Powertrain's allegations that she was involved in the importation of Chinese engines for sale to Powertrain, Ma denies she ever engaged in importing any engine for resale, and denies that she "sold any engine to

---

[6]Defendant Joyce Ma's Answer to Plaintiff's First Amended Complaint at 13 [Doc. No. 84].

6

Powertrain at any time…" Defendant Joyce Ma's Answer to Plaintiff's First Amended Complaint, ¶17 at 5 [Doc. No. 84] (filed February 5, 2012); *Id.* at ¶5, 8 at 2-3 (to same effect). Yet when sued by American Honda, Ma brought a counterclaim against American Honda that she *had* been in the business of importing motors from China for sale to Powertrain and others. There, she alleged:

> 6. Counterclaimants Best and Ma are engaged in commercial activity consisting of importing to the United States from China small engines to be purchased by retailers in the United States. One such retailer whom [sic] purchases the imported engines is the plaintiff in this matter Powertrain, Inc. (Powertrain).

Counterclaim By Joyce Ma and Best Machinery & Electrical, Inc. ¶6 at 3 in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 665] (N.D. Miss.) (filed September 27, 2005) (Exhibit D to the Motion to Dismiss).

Ma was, of course, involved in the importation of motors from China for sale to Powertrain, as found in the jury verdict and first judgment in the American Honda case. Order and Judgment at 4, in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 (Exhibit B).

Ma now denies she filed the counterclaim in the Honda case, and asserts that Best's attorney, not hers, filed a counterclaim. Defendant Joyce Ma's Answer to Plaintiff's First Amended Complaint ¶6 at 2-3. However, that counterclaim in the Honda case was titled: "Counterclaim By Joyce Ma and Best Machinery & Electrical, Inc." Counterclaim By Joyce Ma and Best Machinery & Electrical, Inc. ¶3 at 1 *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 (Exhibit D). The counterclaim concluded with a signature from attorney Raymond Buendia "Counsel for Counterdefendants BEST MACHINERY AND ELECTRICAL, INC. AND JOYCE MA, Individually." *Id.* at 10. Furthermore, Buendia had appeared for Joyce Ma, individually. *See* Application for Admission Pro Hac Vice under Uniform Local Rule 83.1(A) (2)

7

at 2 in *Powertrain, Inc. v. American Honda Motor Co., Inc.* (Exhibit A). Ma confirmed Mr. Buendia has been her attorney when she signed a substitution of counsel in the Honda case allowing him to withdraw. Substitution of Attorney at 2 in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 765] (N.D. Miss.) (filed February 2, 2007) (Exhibit E to the Motion to Dismiss).

Ma clearly now denies Buendia was her counsel because she does not want the pleadings in the Honda case to demonstrate that, after she alleges William Shawn briefly represented her in a deposition, she promptly had counsel on the exact same subject matter. She denies this to attempt to avoid the fatal effect of having new counsel on the accrual of her claims. As will be shown, below, Ma was not only represented by Buendia; later, but when he withdrew, two more out-of-state lawyers, and a crew of lawyers from the Mitchell, McNutt firm in Tupelo entered appearances on her behalf.

### C. Joyce Ma Had Independent Representation on this Matter Well Over Three Years Prior To Filing The Third Party Complaint

As noted, soon after the deposition where Mr. Shawn allegedly represented Ma, she was sued as a third party defendant in the *Honda* case, and, Raymond Buendia as counsel appeared on her behalf and later filed a counterclaim against Honda, also on her behalf. Things did not work out between attorney Buendia and Ma. After he had filed fourteen pleadings for her,[7] on December 6, 2006, Buendia moved to withdraw from representing her and Best. In that motion, he alleged that he had "lost communication with Joyce Ma" who was a party and "the only contact of communication" with Best. Motion to Be Relieved as Attorney of Record for Counterdefendants Best Machinery & Electrical, Inc.'s and Joyce Ma at 2 in *Powertrain, Inc. v.*

---

[7]This is a count of the number of pleadings he filed as reflected on this Court's docket in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668.

8

*American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 665] (N.D. Miss.) (filed December 6, 2006) (Exhibit F to the Motion to Dismiss). In his memorandum in support of his motion, Buendia wrote "aspects of the contractual agreement with his clients continue to be unfulfilled." Memorandum of Law in Support of Motion to Be Relieved as Attorney of Record for Counterdefendants Best Machinery & Electrical, Inc.'s and Joyce Ma at 4 in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 666] (N.D. Miss.) (filed December 6, 2006) (Exhibit G to the Motion to Dismiss).

    The Court responded by refusing to allow Buendia to withdraw through the potential prejudice to other parties. Order in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 712] (N.D. Miss.) (filed January 8, 2007) (Exhibit H to the Motion to Dismiss). Months later, Ma (but not Best Machinery) asked to appear on her own behalf *pro se*,[8] and Buendia was allowed to withdraw as to her,[9] and then, finally, as to Best.[10]

    In the meantime, Ma had a small army of lawyers appear for her in the *Honda* case. First to appear, on April 30, 2007, and May 1, 2007, were four lawyers from the Mitchell, McNutt & Sams law firm in Tupelo, Mississippi.[11] Next, on May 9, 2007, and May 11, 2007, two lawyers

---

[8]Substitution of Attorney at 2 in *Powertrain, Inc. v. American Honda Motor Co., Inc.* (Exhibit H). This document was filed in the court's electronic filing system by Buendia, according to docket, and was signed by Ma.

[9]Order in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 772] (N.D. Miss.) (filed February 20, 2007) (Exhibit I to the Motion to Dismiss).

[10]Order Substituting Counsel in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 986] (N.D. Miss.) (filed June 13, 2007) (Exhibit J to the Motion to Dismiss).

[11]Entry of Appearance (for William D. Prestage) in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 897] (N.D. Miss.) (filed April 30, 2007) (Exhibit K to the Motion to Dismiss); Entry of Appearance (for William G. Armistead, Sr.) in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 898] (N.D. Miss.) (filed April 30, 2007) (Exhibit L to the Motion to Dismiss); Entry of Appearance (for L. Bradley Dillard) in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 900] (N.D. Miss.) (filed May 1, 2007) (Exhibit M to the Motion to Dismiss); Entry of Appearance (for Guy

from the firm Wang, Hartman & Gibbs, PC in Newport Beach, California, moved to be admitted *pro hac vice*.[12] Joyce Ma had a total of seven lawyers represent her in the Honda case after ShawnCoulson's brief alleged representation.

### III. ARGUMENT

#### A. Standard for Motions to Dismiss and the Court's Use of Judicial Notice Evidence

In quoting the familiar standard for motions to dismiss, the Fifth Circuit notes that it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (quoted in *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

> However, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." 2A *Moore's Federal Practice* ¶ 12.07 [2.–5] at 12–91 (footnote omitted). And, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993).

*Blackburn*, 42 F.3d at 931.

More recently, the United States Supreme Court has recognized, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal,* 556 U.S. 662, 686 (2009). These principles apply in considering an affirmative defense where the complaint shows the defense is time-barred. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("a

---

Mitchell, III) in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 905] (N.D. Miss.) (filed May 1, 2007) (Exhibit N to the Motion to Dismiss).

[12]Motion for Admission *Pro Hac Vice* (for Richard F. Cauley) in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 915] (N.D. Miss.) (filed May 9, 2007) (Exhibit O to the Motion to Dismiss); Motion for Admission *Pro Hac Vice* (for Michelle M. McCliman) in *Powertrain, Inc. v. American Honda Motor Co., Inc.,* No. 1:03-cv-668 [Doc. No. 922] (N.D. Miss.) (filed May 11, 2007) (Exhibit P to the Motion to Dismiss).

complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action").

While some cases suggest that a court considering a motion to dismiss is limited to the four corners of the complaint, this is not so. As Wright and Miller recognize:

> In determining whether to grant a Federal Rule 12(b)(6) motion, district courts primarily consider the allegations in the complaint. The court is not limited to the four corners of the complaint, however. Numerous cases… have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment. These matters are deemed to be a part of every complaint by implication.

Wright, Miller, Kane, Marcus and Steinman, *Federal Practice & Procedure* § 1357 (3d ed.); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing Wright & Miller).

The Fifth Circuit has applied these principles and *Tellabs* in affirming a district court's consideration of public record documents generated by the F.D.A. in a medical device lawsuit. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Courts of appeals have consistently approved the district court's judicial notice consideration of pleadings from other cases in the same district because a court's own pleadings are "generally known within the territorial jurisdiction of the trial court," *See Funk*, 631 F.3d at 783 (quoting Fed. R. Evid. 201(b)); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("The district court properly considered the public court documents in deciding the defendants' motions to dismiss"). In *Henson*, after explaining, "We are not alone," the 7th Circuit cited cases from three other circuits and Wright and Miller on this point. *Id.*

11

It is clear that, in evaluating the motion to dismiss in this case, this Court is authorized through judicial notice to consider pleadings filed in other cases before this Court. This principle should have particular force where most of these pleadings, as here, were filed by the third party plaintiff herself, Joyce Ma.

### B. Choice of Law: Mississippi Law Governs for Statutes of Limitations

A federal court sitting in diversity applies the law of the forum for its choice of law rules. *Delhomme Indus. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1052 (5th Cir. 1982)("because our jurisdiction is based on diversity, we must apply Louisiana's rules in making this critical decision. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)"). While Mississippi courts generally apply the "center of gravity" test for choice of law, for certain issues such as those relating to the statutes of limitations, Mississippi courts apply Mississippi law regardless of where the action might have arisen. *Lee v. Swain Bldg. Materials Co.,* 529 So.2d 188, 190 (Miss. 1988). The Mississippi Supreme Court has explained this as follows:

> Mississippi applies its own procedural law to actions filed in the courts of this state. *Lee v. Swain Bldg. Materials Co.,* 529 So.2d 188, 190 (Miss.1988). *See also, Cook v. State Farm Mutual Ins. Co.,* 241 Miss. 371, 128 So.2d 363 (1961), *cert. denied* 368 U.S. 898, 82 S.Ct. 176, 7 L.Ed.2d 94 (1961); *Wright v. Jacobs,* 228 Miss. 641, 89 So.2d 708 (1956). Thus, Mississippi's six (6) year statute of limitations for tort actions, Miss. Code § 15-1-49 (1972), applies to a Mississippi lawsuit even though the tort occurred in Louisiana. *Swain Bldg. Materials Co.,* 529 So.2d at 190.

*Ford v. State Farm Ins. Co.*, 625 So. 2d 792, 793-94 (Miss. 1993) (footnote omitted); *see Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 433 (Miss. 2006) (Mississippi statutes of limitations apply in Mississippi courts).

12

Because this Court, sitting in diversity, must apply the choice of law rules of the forum state, and because Mississippi's choice of laws rules require use of Mississippi's own limitations statutes and rules in Mississippi courts, this Court must apply the law of Mississippi in evaluating the statute of limitations issue in this case.

### C. Ma's Claims are Time-Barred Because Any Purported Claims were "Clear and Obvious" More Than Three Years Before She Filed Suit

Joyce Ma filed her Third Party Complaint on July 3, 2012. Third Party Complaint against William H. Shawn, ShawnCoulson LLP [Doc. No. 42] (filed July 3, 2012). The statute of limitations for a malpractice claim in Mississippi is three years. *Champluvier v. Beck*, 909 So. 2d 1061, 1063 (Miss. 2004) (applying three-year statute of limitations in Miss. Code Ann. § 15-1-49 to legal malpractice claim). Accordingly, for Ma's claims to have been timely filed, they must have accrued on or after July 3, 2009. The issue of when a statute of limitations begins to run is a question of law. *Evans v. Howell*, 121 So. 3d 919, 923 (Miss. Ct. App. 2013).

There are three alleged instances of malpractice in this action: a failure to document a "do no harm" agreement, the existence of a conflict of interest between Powertrain and Joyce Ma, and a failure to maintain Ma's documents. Ma alleges William Shawn represented her at a deposition on May 2, 2005 [Ma's Amended Third Party Complaint ¶9 at 3], and she also alleges and admits she concurrently knew Mr. Shawn also represented Powertrain, while actually acknowledging Mr. Shawn spoke as Powertrain's disclosed agent. *Id.* ¶10 at 3-4. This is what she alleges to be the "clear and obvious" conflict that existed on May 2, 2005. *Id.* ¶22 at 6. Ma also alleges Mr. Shawn simultaneously spoke of a "do no harm" agreement, under which Powertrain agreed to protect her from harm in the American Honda litigation. She therefore alleges malpractice in Shawn's failure to document that agreement. *Id.* ¶10 at 3-4.

Obviously, Ma knew Mr. Shawn represented her and Powertrain on May 2, 2005, and, given her allegation that the conflict was "clear and obvious," Ma knew or should have known

13

then and there of the alleged conflict. Furthermore, Ma also knew, if not simultaneously, then shortly thereafter, the "do no harm" agreement had neither been prepared nor executed because she never saw or signed one.

By September 9, 2005, Ma had been sued in the Honda case where she had a lawyer appear for her. Application for Admission Pro Hac Vice under Uniform Local Rule 83.1(A)(2 in *Powertrain, Inc. v. American Honda Motor Co., Inc.* (Exhibit A). During that representation, or that of the half-dozen lawyers who represented her from May of 2007 after Mr. Buendia quit, *see supra* at 9 (listing appearances), certainly reasonable diligence would require Ma and her team of attorneys to ask about the whereabouts of her documents. Even without legal advice, certainly Ma would have been on notice that she might need such documents, whatever they were.

Each of these events—the deposition, agreement, conflict (2005), Honda suing Ma (also 2005), and her acquisition of separate representation in the matter (2005 and 2007) occurred well before 2009. If those events can be said to have caused her action to accrue, her claim is time-barred. While Ma is coy about the date her claim accrued in her Third Party Complaint, she does admit that the deposition, agreement, and conflict all arose in 2005. Ma Amended Third Party Complaint ¶9-10, 22 at 3-4, 6. Ma, however, does not tie her complaint about documents to any event during the Honda litigation, but represents that "[i]n or about March 2012" she called Mr. Shawn for information about the case, and he said he had turned over all documents to Oneal Wood of Powertrain after winning a fee dispute with Powertrain, and that he had no documents. *Id.* ¶13 at 11. Ma also suggests the failure to document the purported agreement "caus[ed], at least partially, the breach of the contract" when Powertrain sued Ma on May 5, 2011. *Id.* ¶18 at 5. She also alleges the conflict of interest "was left unresolved until, at least, May 5, 2011." *Id.* ¶22-23 at 6. Ma's allegations are thus an apparent attempt to suggest that accrual of her legal malpractice claim is tied to the date she was sued by PowerTrain.

14

Mississippi applies the discovery rule for accrual in attorney malpractice claims. This means that the period of limitations in such a suit begins to run when the client learns, or through reasonable diligence should have learned, of counsel's negligence. *Smith v. Sneed*, 638 So.2d 1252, 1253 (Miss. 1994); *Champluvier*, 909 So. 2d at 1063 (stating this test). Mississippi courts adhere strictly to the discover/should-have-discovered rule, rejecting, for instance, that limitations might run from the outcome date of litigation where counsel was allegedly negligent. *See Stringer v. Lowe,* 955 So.2d 381, 383 (Miss. Ct. App. 2006) (rejecting argument that malpractice claim accrued when conviction resulting from alleged malpractice was overturned, where client should have known earlier of negligence).

The test is whether the client had notice or knowledge of the alleged malpractice, and not when it might have caused an injury. Thus, if Ma had notice suggesting she had a malpractice claim before Powertrain sued her, the date of the Powertrain suit is immaterial. She knew in May of 2005 that the agreement had not been executed. She knew of the "obvious" conflict. She also knew what documents Shawn may have had during the brief alleged representation. The only question remaining is whether she had to show any diligence as to the documents claim.

Knowledge is tested objectively, with the question being what the plaintiff should have known. In *Stevens v. Lake*, 615 So. 2d 1177, 1182 (Miss. 1993), the court held the claim accrued when the plaintiff, Stevens, knew most of the underlying facts about the claim. At a time "[m]ost of the facts from which… an inference of fraud [as a part of legal malpractice] were known to Stevens" the claim accrued and the statute of limitations began to run.. "Knowledge" means *notice* of the claim. "The would-be plaintiff need not have become absolutely certain that he had a cause of action; he need merely be on notice-or *should* be-that he should carefully investigate the materials that suggest that a cause of action probably or potentially exists." *Spann*

15

*v. Diaz*, 987 So. 2d 443, 450 (Miss. 2008) (quoting *First Trust Nat'l Ass'n v. First Nat'l Bank of Commerce*, 220 F.3d 331, 336-37 (5th Cir.2000), a breach of fiduciary relations claim against a trustee). In *Spann,* there was a court decision denying a personal injury claim that was allegedly handled negligently. Because this decision was in the public record, the plaintiff was charged with knowledge of the decision. There could be no claim of fraudulent concealment of the decision, and the statute of limitations began to run on a legal malpractice suit at the time of the decision. *Spann,* 987 So.2d at 450.

In this case, Ma was clearly on notice about each issue of claimed malpractice, and Ma makes no suggestion or allegation that any alleged malpractice was concealed, or of the sort a layman would not have had notice. Consequently, Ma cannot benefit from the discovery rule because:

> … the discovery rule is to be applied when "the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question," or it may be applied "when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *McCain v. Memphis Hardwood Flooring Co.,* 725 So.2d 788, 794 (Miss.1998) (citing *Sneed,* 638 So.2d at 1257; *Staheli v. Smith,* 548 So.2d 1299, 1303 (Miss.1989)). Given this precedent, it must be determined whether the alleged injury in this case was secretive or inherently undiscoverable, or in the alternative, whether the plaintiffs, as laymen, could not have reasonably been expected to perceive the injury at the time of the alleged wrongful act.

*Channel v. Loyacono*, 954 So. 2d 415, 421 (Miss. 2007).

Further, the Mississippi Supreme Court has drawn distinctions in applying the discovery rule between cases, such as *Spann,* where it would be evident to a layman that the claim had arisen, and other cases where the information available to a layman would not have made it evident that there was a claim. It explained:

> The discovery rule is applied when the facts indicate that "it is unrealistic to expect a layman to perceive the injury at the time of

16

> the wrongful act." *McCain v. Memphis Hardwood Flooring Co.,* 725 So.2d 788, 794 (Miss.1998) (overruled on other grounds). In *Sneed*, the Court found that the discovery rule applies when it would be impractical to require a layperson to have discovered the malpractice at the time it happened. *Id.* at 1257–58.

*Bennett v. Hill-Boren, P.C.*, 52 So. 3d 364, 369 (Miss. 2011).

In *Bennett,* the lawyer failed to obtain timely service of process on a defendant. The lawyer asserted that he had told the client he was having trouble obtaining process, and that examination of the court record would have shown that process had not been effected. The court held that the court record lacking evidence of service was not the sort of fact that would give a lay legal malpractice plaintiff notice. *Bennett,* 52 So.2d at 370-71.

By contrast, in *Evans v. Howell,* Evans claimed negligence in how a lawyer had handled a series of contracts involving buy-outs on death of either of two participants in joint ventures. Ultimately, a court ruled that only one of three joint ventures were covered by the buy-out agreements. Evans had signed two of the contracts, and had received but not signed a third. The court held that Evans was charged with reading the contracts, and that, reading the contracts, he would have seen that the contracts did not accomplish his desired goal. The statute of limitations began to run at the time of the contracts, and not when the litigation over the buy-outs commenced. In explaining the distinction, the *Evans* court observed:

> Here, there was nothing "secretive or inherently undiscoverable" about Howell's preparation of and the execution of the 2005 agreement. Further, we can determine whether Evans, "as [a] laym[a]n, could not have reasonably been expected to perceive the injury at the time of the alleged wrongful act." *Id.* at 421 (¶ 19).

*Evans,* 121 So.2d at 924.

In this case, there is likewise nothing secret or inherently undiscoverable about the issues raised by Ma. She knew about Mr. Shawn's representation of Powertrain. She knew that no agreement had been signed. She knew about her documents. To paraphrase *Evans,* "there was

17

nothing 'secretive or inherently undiscoverable'" about the unexecuted contract, the possible conflict, or the documents.

Further, Ma was clearly not diligent. "Diligence" means the plaintiff must attend to his or her rights, the central message of *Stevens.* Where a client "had reason to know his attorneys acted negligently," the statute of limitations began to run. *Hymes v. McIlwain,* 856 So.2d 416, 419 (Miss. Ct. App. 2003). Thus, "to claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury." *Bennett*, 52 So.2 364, 371 (quoting *Wayne Gen. Hosp. v. Hayes,* 868 So.2d 997, 1001 (Miss.2004)).

Reasonable diligence plays a part here in more than one way. The allegations of Ma's Third Party Complaint describe Ma as being entirely passive for over seven years. She did nothing about the undocumented agreement, the conflict, or the documents. Moreover, this Court also may go beyond the allegations, through judicial notice, and review what actually occurred in the Honda case, where it is obvious Ma had independent representation, in great numbers, to eliminate any issues of concealment. By any standard, any diligence would have disclosed the claims Ma raises by 2005, or 2007, so the statute of limitations ran at the latest in 2010, and at the absolute latest, about a year before she filed suit.

## CONCLUSION

The Third Party Defendants represented Joyce Ma, a Rule 30(b)(6) deponent, at most, for a matter of days in 2005 when she was deposed in the Honda case. Since then Ma has had at least a half-dozen lawyers represent her on the exact-same subject matter, all well over three years before she filed her complaint in this cause. Each and every such claimed violation of attorney-client duty would have been discernable from 2005 and every time Ma hired a new lawyer in the Honda litigation. Specifically, in May 2005, Ma knew the alleged "do no harm" agreement had not been placed in writing, and, given her allegation that Mr. Shawn's conflict

18

was "clear and obvious," she cannot escape imputation of such knowledge, and if Ma had not bothered to retrieve or demand whatever documents Mr. Shawn may have possessed, her new counsel would certainly have been charged with doing so. In short, all Ma's alleged errors and omissions clearly fall well beyond Mississippi's three-year statute of limitations for legal malpractice. Even after being given leave of court to frame cognizable causes of action, Ma cannot state a claim for relief plausible on its face. Her amended complaint must therefore be dismissed, with prejudice.

        Respectfully submitted this the 17th day of February, 2014.

        s/    T.H. Freeland, IV
            T.H. Freeland, IV
            Bar No. 5527

OF COUNSEL:

FREELAND & FREELAND, LAWYERS
1013 JACKSON AVE, P.O. Box 269
OXFORD, MS 38655
(662) 234-3414

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following CM/ECF participant attorneys of record:

Duncan Lott
Langston & Lott
P. O. Box 382
Booneville, MS 38829-0382


Jeffery M. Navarro
P.O. Box 162
Amory, MS 38821

This the 17th day of February, 2014.

            s/  T.H. Freeland, IV
               T.H. Freeland, IV