### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

| | |
|---|---|
| POWERTRAIN, INC., A MISSISSIPPI CORPORATION | PLAINTIFF |
| v. | CAUSE NO.: 1:11-cv-00105-GHD-DAS |
| JOYCE MA, INDIVIDUALLY, AND BEST MACHINERY & ELECTRICAL, INC. | DEFENDANTS |
| JOYCE MA, INDIVIDUALLY | THIRD PARTY PLAINTIFF |
| v. | |
| WILLIAM H. SHAWN, AND SHAWNCOULSON, LLP | THIRD PARTY DEFENDANTS |

### THIRD PARTY PLAINTIFF JOYCE MA'S MEMORANDUM BRIEF IN SUPPORT OF HER OPPOSITION TO THE THIRD PARTY DEFENDANTS' SECOND MOTION TO DISMISS

COMES NOW, Third Party Plaintiff Joyce Ma, the individual ("Ma"), and, by counsel, respectfully submits her Memorandum of Points and Authorities in Support of her opposition to the Second Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) by Third Party Defendants collectively shown herein as ("Shawn").

### 1. THE LEGAL BASIS

1. Motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y,* No. 10-51042, 2012 WL 201866, at *2 (5th Cir. Jan. 24, 2012) (citing *Gregson v. Zurich Am. Ins. Co.,* 322 F.3d 883, 885 (5th Cir. 2003)). "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (US), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible. *Lone Star Fund,* 594 F.3d at 387 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

2. Rule 1.4 of *Mississippi Rules of Professional Conduct* provides that "[a] lawyer shall … promptly comply with reasonable requests for information" by client.

3. *ABA Model Rule* 1.16(d) provides that, upon termination of representation, "a lawyer shall take steps . . . to protect a client's interests . . . [and surrender] papers and property to which the client is entitled."

4. Where a client "had reason to know his attorneys acted negligently," the statute of limitations began to run. *Hymes v. McIlwain,* 856 So.2d 416, 419 (Miss. Ct. App. 2003).

## 2. STATUTE OF LIMITATION

A. SINCE MA DISCOVERED THE NEGLIGENCE WHEN POWERTRAIN FILED THE INSTANT CASE, THE STATUTE OF LIMITATION BEGAN TO RUN NO EARLIER THAN MAY 3, 2011.

5. In this second motion to dismiss, Shawn claims that Mississippi's three-year statute of limitations for attorney malpractice claims had long since run before suit was filed.

6. Ma agrees with Shawn that where a client "had reason to know his attorneys acted negligently," the statute of limitations began to run. *Hymes v. McIlwain,* 856 So.2d 416, 419 (Miss. Ct. App. 2003).

7. Ma thought that her do-no-harm agreement with Powertrain, with the involvement of Shawn, was properly done. She has no legal expertise to recognize

the significance of not putting the agreement in writing, of the potential conflict between Powertrain and her, as Powertrain might think that she, the individual, was in the stream of commerce of selling the subject engines to Powertrain, and of the conflict of interests of the Shawn-Powertrain relation and the Shawn-Ma relation.

8. The essence of the "do-no-harm contract between Ma and the Plaintiff, Powertrain, was that Powertrain was obligated not to file the instant lawsuit against Ma. That is what the Third Party Defendants, Shawn and Shawn/Coulson, represented to Ma. However, the Third Party Defendants, Shawn and Shawn/Coulson never memorialized that agreement for Ma's benefit. The earliest time that Ma knew or had reason to know that Shawn and Shawn/Coulson acted negligently was on May 3, 2011, or soon thereafter, when she was served the summons of the instant case (Doc. No. 2) and subsequently realized that the do-no-harm agreement was negligently done.

B. SHAWN MISCHARACTERIZED MA'S LANGUAGE

9. In many places in Shawn's second motion to dismiss, Shawn stated that Ma alleged that the conflict was "clear and obvious."

10. For instance, on page 3, Shawn stated that "Ma alleges that the conflict of interest was 'clear and obvious' at the May 2, 2005 deposition. She insists:

> "22. When the Third Party Defendants offered to represent Powertrain in the *Honda* case, they knew or should have known the clear and obvious conflict of interest…." (Doc. No. 145 at 3)

11. Clearly, by "they," Ma meant "the Third Party Defendants," i.e., Shawn, not Ma herself. It is a mischaracterization to allege that Ma meant here that the conflict was "clear and obvious" in general, or that it is "clear and obvious" to Ma, in particular. Ma only alleged that the aforementioned significances (¶ 7) are "clear and obvious" to Shawn, the attorney.

12. Therefore, Shawn's statement that "Ma alleges that the conflict of interest was 'clear and obvious'" is a mischaracterization of what Ma actually alleged.

C. MA HAS PROPERLY ALLEGED SHAWN'S BREACH

13. Shawn claimed that "William Shawn 'turn[ed] over all of said records to one client only, Powertrain.' Significantly, Ma makes no allegation about what documents that Ma may have sought, and no allegation that William Shawn's

transmission of the documents to Powertrain caused her any damage of any kind." (Doc. No. 145 at 4)

14. It appears that if Shawn has turned over all documents to Powertrain. Therefore the preciseness of Ma's document request to Shawn is irrelevant.

15. As to the issue of damages, one of the damages is that Ma is exposed to this lawsuit. Had the do-no-harm promise been properly handled by her lawyers, the Third Party Defendant, by memorializing the promise in writing, Ma would not be in this lawsuit.

D. MA REQUESTS THE COURT FOR LEAVE TO AMEND ITS ANSWER TO POWERTRAIN'S AMENDED COMPLAINT

16. Shawn pointed out that Ma stated in her Answer to Powertrain's amended complaint (Doc. No. 84):

> 59. Ma has never formed any contract with Powertrain.
>
> 60. All of Powertrain's claims are barred because there has been no contract between Ma and Powertrain.

17. While emphasizing that the Answer is not part of the third party complaint to be examined pursuant to *Lone Star Fund* and that the do-no-harm

promise is clearly stated in the Answer, Ma hereby requests the leave of the Court to amend the First Amended Complaint (Doc. No. 84) as follows:

> 59. Ma has never formed any contract with Powertrain to sell the subject engines.
>
> 60. All of Powertrain's claims are barred because there has been no contract between Ma and Powertrain to sell the subject engines. (Exhibit A)

### 3. THE *HONDA* CASE IS ONLY MARGINALLY RELEVANT TO THE INSTANT CASE

18.     Shawn has attached many excerpts from the *Honda* case as exhibits to their Motion.  The purpose of these exhibits is to point out many alleged apparent discrepancies between Ma's knowledge during that time and her claims now. Those matters are, however, irrelevant to Ma's Amended Third Party Complaint as demonstrated below.

19.     First, Shawn represented Ma in the do-no-harm agreement period, before any other lawyer entered the scene. Therefore, the other lawyers were not involved in the matter of the do-no-harm agreement.

20. Second, it is entirely normal for Best Machinery & Electrical, Inc., the employer, to take care of the *Honda* case for Ma, the employee, when she was sued for company business. Therefore, it is entirely possible that Ma was only nominally engaged in the *Honda* case, e.g., the decisions of filing any papers and engaging any attorneys were made by others. All statements made by Ma and cited by Shawn, when viewed under that light, are coherent, reasonable, and only marginally relevant to this case.

## CONCLUSION

**WHEREFORE,** Ma respectfully requests the Court to deny the Third Party Defendants' Second Motion to Dismiss. Alternatively, Ma respectfully requests leave from the Court to amend the Third Party Complaint.

In addition, Ma hereby requests the leave of the Court to amend her Answer to Powertrain's First Amended Complaint. (Exhibit A)

Dated: February 20, 2014                                     Respectfully Submitted,

JOYCE MA
DEFENDANT/THIRD PARTY PLAINTIFF

By /s/ Jeffery M. Navarro
JEFFERY M. NAVARRO
P.O. BOX 162
AMORY, MS 38821
662-256-3706

MBN: 3755<br>
Attorney for Defendant/Third Party Plaintiff,<br>
Joyce Ma

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

___/s/ Jeffery M. Navarro_<br>
Jeffery M. Navarro