IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

POWERTRAIN, INC., a Mississippi corporation                    PLAINTIFF

v.                                             CIVIL ACTION NO. 1:11-cv-00105-GHD-DAS

JOYCE MA                                                       DEFENDANT

## MEMORANDUM OPINION GRANTING COUNTERDEFENDANT POWERTRAIN, INC.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT JOYCE MA'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court are Counterdefendant PowerTrain, Inc.'s motion for summary judgment [202] on Counterplaintiff Joyce Ma's counterclaims and Defendant Joyce Ma's motion for summary judgment [211] on Plaintiff PowerTrain, Inc.'s claims. Upon due consideration, the Court finds that Counterdefendant PowerTrain, Inc.'s motion for summary judgment [202] should be granted, and Defendant Joyce Ma's motion for summary judgment [211] should be denied.

### *A. Factual and Procedural Background*

Plaintiff PowerTrain, Inc. ("PowerTrain") brings this diversity action against Defendant Joyce Ma ("Ma"),[1] a California citizen.[2] The parties apparently agree that Mississippi law governs the action. PowerTrain alleges that Ma, both individually and as the alter ego of Best Machinery & Electrical, Inc., imported to the United States from China small engines that violated the EPA's emission and labeling standards and were not covered by certificates of

---

[1] PowerTrain also initially sued Defendant Best Machinery & Electrical, Inc. On November 20, 2013, the Court granted PowerTrain's motion for default judgment against Defendant Best Machinery & Electrical, Inc. *See* Ct.'s Default J. [124]; *see also* Ct.'s Order [117] & Mem. Op. [118] Re: Service of Process on Defendant Best Machinery & Electrical, Inc.

[2] Diversity jurisdiction is established in this action, as complete diversity of citizenship exists between PowerTrain, a Mississippi resident, and Ma, a California resident, and the jurisdictional amount in controversy is satisfied by PowerTrain's prayer for damages exceeding $2,000,000.

1

conformity; PowerTrain purchased 78,284 of the engines (the "subject engines") from Ma; PowerTrain sold and/or distributed the subject engines to Wood Sales, Inc. for further resale in the United States by Wood Sales, Inc. and/or Tool Mart, Inc.; and the EPA determined that the subject engines violated the Clean Air Act and regulations promulgated thereunder. PowerTrain alleges that as a direct and proximate result of Ma's sale of the subject engines to PowerTrain, the United States filed civil actions against PowerTrain for injunctive relief and the assessment of civil penalties for these violations. A consent decree/judgment was entered against PowerTrain for civil penalties in the amount of $2,000,000 plus interest and ordering PowerTrain to export or permanently destroy the certain engines that were in violation of federal law and implement an emission off-set project. PowerTrain asserts causes of action against Ma for negligence/wantonness, breach of contract, breach of warranty, and piercing-the-corporate-veil/alter ego liability.

Ma asserts counterclaims against PowerTrain for breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and constructive fraud. Ma alleges that on or about December 19, 2003 PowerTrain and others filed a complaint against American Honda Motor Co. in a case styled *Powertrain, Inc., et al., v. American Honda Motor Co., et al.*, No. 1:03-cv-668, 2007 WL 2254346 (N.D. Miss. Aug. 2, 2007) (the "*Honda* case"), Ma's Counterclaims [34] ¶ 5, a case concerning whether PowerTrain and others had illegally copied American Honda Motor Co.'s trade dress. Ma alleges that shortly thereafter, Oneal Wood, the owner of PowerTrain, informed Ma that PowerTrain needed her help in the *Honda* case and offered to represent her. *Id.* ¶ 6. Ma further alleges that she informed Oneal Wood that she was afraid of being personally involved in the *Honda* case. *Id.* ¶ 7. Ma avers that Oneal Wood "offered to Ma that Power[T]rain would do no harm to Ma and represent Ma if [American Honda Motor Co.] were

2

to sue Ma and if Best [Machinery & Electrical, Inc.] would refuse to pay Ma's attorney[']s fees." *Id.* Ma says she accepted the offer. *Id.* ¶ 9. William H. Shawn, Esquire, lead counsel for PowerTrain and others in the *Honda* case, then allegedly "prepared Ma for and represented Ma in the deposition of Ma by [American Honda Motor Co.]," while reassuring her that PowerTrain would do no harm to her. *Id.* ¶¶ 9–10. "[Jeffrey] Wood, son of Oneal Wood and an employee of Power[T]rain, further promised Ma that if [American Honda Motor Co.] were to involve Ma personally in the [*Honda*] case, Power[T]rain would file papers with the Court to dismiss Ma." *Id.* ¶ 11. Ma avers that she cooperated fully with PowerTrain and performed her part of the bargain in the *Honda* case. *Id.* ¶ 12. Ma further avers that PowerTrain lost the *Honda* case; that American Honda Motor Co. turned its material over to the EPA which caused the EPA to file a civil complaint against PowerTrain; and that eventually PowerTrain settled with the EPA. *Id.* ¶¶ 13–14. Subsequently, on May 3, 2011, PowerTrain, through its local counsel Duncan L. Lott, filed the instant complaint against Ma.[3] According to Ma, the filing of the instant lawsuit constituted a breach of the alleged contract entered into by Ma and PowerTrain. *Id.* ¶ 15.

In the midst of the proceedings in the instant case, Ma sought and was granted leave to file third-party claims against William H. Shawn and ShawnCoulson, LLP. In her third-party complaint and amended third-party complaint, Ma averred that the Third-Party Defendants represented her in the earlier *Honda* case and committed legal malpractice and negligent misrepresentation when they, *inter alia*, failed to put in writing an oral do-no-harm agreement between Ma and PowerTrain. Ma further alleged that that failure proximately caused the instant lawsuit to be brought against Ma. Her factual allegations in support of her third-party claims almost exactly mirrored those in her counterclaims against PowerTrain. This Court subsequently

---

[3] Ma incorrectly states that PowerTrain filed the instant complaint against her on May 5, 2011. The complaint was filed on May 3, 2011, as indicated on the docket report of the case *sub judice*.

dismissed the third-party claims on a motion by the Third-Party Defendants, finding that Ma had failed to adequately allege both the existence of a lawyer-client relationship and proximate cause, and thus that Ma had failed to state a claim for legal malpractice against the Third-Party Defendants. *See* Ct.'s Order [234] & Mem. Op. [235]. The Court further found that Ma had failed to state a claim for negligent misrepresentation against the Third-Party Defendants. Therefore, the Court dismissed Ma's third-party claims against William H. Shawn and ShawnCoulson, LLP.

The Court now has before it two motions for summary judgment: one filed by PowerTrain with respect to Ma's counterclaims against PowerTrain, and one filed by Ma with respect to PowerTrain's claims against Ma.

### *B. Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548.

Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

With the foregoing standard in mind, the Court examines first PowerTrain's motion for summary judgment on the counterclaims and then Ma's motion for summary judgment on the claims.

### C. *PowerTrain's Motion for Summary Judgment on Ma's Counterclaims*

PowerTrain contends in its motion for summary judgment that the Court should dismiss Ma's counterclaims, because Ma's counterclaims are barred by the applicable statute of limitations and by the statute of frauds. The Court addresses each contention in turn.

First, PowerTrain contends that Ma's counterclaims are time-barred under Mississippi Code § 15-1-49, which provides in pertinent part that "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years after the cause of such action accrued, and not after." MISS. CODE ANN. § 15-1-49(1). PowerTrain contends that the three key events that form the background of Ma's counterclaims occurred outside the three-year statute of

limitations: first, Ma alleges that prior to her May 2005 deposition in the *Honda* case Ma and PowerTrain entered into the alleged oral do-no-harm agreement; second, as stated, in May of 2005, American Honda Motor Co. deposed Ma in the *Honda* case; and third, in September of 2005, American Honda Motor Co. sued Ma in the *Honda* case, and Ma retained her own counsel, Raymond Buendia. PowerTrain maintains that Ma testifies in her deposition that "one aspect of harm" she suffered occurred when Oneal Wood refused to pay Ma's attorney's fees in the *Honda* case, despite his earlier promise in the alleged oral do-no-harm agreement that he would pay her attorney's fees. *See* Ma's Dep. [202-2] at 74–75. PowerTrain further maintains that Ma testifies in her deposition that another aspect of harm occurred when Jeffrey Wood failed to file papers with the court in the *Honda* case to dismiss Ma, despite his earlier promise in the alleged do-no-harm agreement that it would do so if American Honda Motor Co. sued Ma personally. *See id.* at 77. PowerTrain maintains that Ma claims that the alleged oral do-no-harm agreement had been clearly and repeatedly breached between 2005 and 2007. Thus, PowerTrain maintains that Ma is time-barred from asserting her counterclaims.

The Court notes that Ma alleges that the last breach of the oral do-no-harm agreement occurred when PowerTrain filed the instant suit against Ma in May of 2011. *See* Ma's Counterclaims [34] ¶ 15. However, Ma fails to advance any argument in support of this allegation in her response to PowerTrain's motion for summary judgment. In fact, she fails to advance any argument at all on the statute-of-limitations issue. Ma "may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *See McClure*, 490 F. App'x at 667 (citing *Hathaway*, 507 F.3d at 319). The Court finds that Ma has failed to raise a genuine dispute of fact

concerning the timeliness of her counterclaims. Therefore, her counterclaims must be dismissed on this ground. However, the counterclaims must be dismissed on other grounds, as well.

PowerTrain further contends that the counterclaims are barred by the statute of frauds, because the vaguely alleged do-no-harm agreement could not have been performed in fifteen months from the alleged date of its formation—some date prior to May 2005—because the *Honda* case did not even go to trial until July of 2007, at least twenty-six months after the alleged agreement was formed. Thus, PowerTrain contends that Ma knew the alleged agreement would fall outside the fifteen-month statute of frauds. Ma responds that she "wanted . . . a promise from Power[T]rain that no harm would come to her," because although she "had no conception as to what she could have been sued over by Power[T]rain," she wanted to protect herself from being sued. Ma's Mem. Br. Supp. Resp. Opp'n to PowerTrain's MSJ [217] at 2. She maintains that she received her desired promise, but not in writing, even though "Ma concedes that she had every opportunity to reduce this agreement to writing." *Id.* Ma maintains that the content of this alleged agreement was that PowerTrain would not do her harm, including the harm of suing her. Ma further maintains that she relied on "the Third[-]Party Defendant, William Shawn, . . . as her attorney" and "the lack of a writing falls squarely on the Third[-]Party Defendant, William Shawn." *Id.* at 2–3, 4. Finally, Ma maintains that the alleged do-no-harm agreement was partially performed in that she cooperated with PowerTrain in the *Honda* case and PowerTrain did not sue Ma over the *Honda* case. *Id.* at 4.

Mississippi's statute of frauds provides in pertinent part:

> An action shall not be brought whereby to charge a defendant or other party: upon any agreement which is not to be performed within the space of fifteen months from the making thereof; unless . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing,

and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

MISS. CODE ANN. § 15-3-1(d). The Mississippi Supreme Court has stated: "The principal purpose of the statute of frauds . . . is to require the contracting parties to reduce to writing the specific terms of their contract, . . . and thus to avoid dependence on the imperfect memory of the contracting parties, after the passage of time, as to what they actually agreed to some time in the past." *Sharpsburg Farms, Inc. v. Williams*, 363 So. 3d 1350, 1354 (Miss. 1978). Contracts to be performed "within the space of fifteen months" do not have to be reduced to a writing. *See* MISS. CODE ANN. § 15-3-1(d).

Ma appears to maintain in her allegations, deposition testimony, and response to PowerTrain's motion for summary judgment that the alleged do-no-harm agreement contained not only a promise not to sue Ma in the *Honda* case itself, but also a promise not to sue Ma in any future lawsuit—including the instant suit. Such an oral argument could not be performed "within the space of fifteen months." Accordingly, the alleged oral do-no-harm agreement is barred by the statute of frauds. *See* MISS. CODE ANN. § 15-3-1(d).

Although Ma argues that any lack of writing is due to "her counsel," Third-Party Defendant, William H. Shawn, the Court finds this argument is not well taken. For the reasons stated in the Court's prior memorandum opinion [235] granting the Third-Party Defendants' motion to dismiss Ma's third-party claims, Ma has failed to demonstrate the existence of a lawyer-client relationship between herself and the Third-Party Defendants, William H. Shawn and ShawnCoulson, LLP. Thus, the Court finds that Ma's counterclaims are barred by the statute of frauds and must be dismissed on this ground, as well.

Finally, the Court finds that Ma has failed to allege in her counterclaims that PowerTrain even had a duty to perform the alleged do-no-harm agreement. Ma alleges the substance of the

agreement is that Oneal Wood "offered to Ma that Power[T]rain would do no harm to Ma and represent Ma **if** [American Honda Motor Co.] were to sue Ma **and if Best [Machinery & Electrical, Inc.] would refuse to pay Ma's attorney[']s fees**." Ma's Counterclaims [34] ¶ 7 (emphasis added). As alleged, the oral do-no-harm agreement would be performed only if two conditions were met: if American Honda Motor Co. sued Ma in the *Honda* case **and** if "Best [Machinery & Electrical, Inc.] . . . refuse[d] to pay Ma's attorney[']s fees." *See id.* ¶ 7. Ma neither alleges nor argues that Best Machinery & Electrical, Inc. refused to pay her attorney's fees after Honda sued her in the *Honda* case, and thus she neither alleges nor argues that the two conditions were satisfied in order for PowerTrain to have a duty not to harm her under the alleged oral agreement. Therefore, Ma also fails to raise a genuine dispute of fact that PowerTrain had a duty not to breach the alleged do-no-harm agreement; her counterclaims must be dismissed on this ground, as well.

For all of the foregoing reasons, PowerTrain's motion for summary judgment [202] must be granted, and all Ma's counterclaims against PowerTrain must be dismissed.

### D. Ma's Motion for Summary Judgment on PowerTrain's Claims

Finally, the Court addresses Ma's motion for summary judgment [212] concerning the claims PowerTrain asserts against her in the instant case. Ma argues that PowerTrain's claims are time-barred under Mississippi's three-year statute of limitations and that PowerTrain does not have evidence to support its claims.

First, with respect to the statute-of-limitations issue, the Court finds that PowerTrain's claims are not time-barred under Mississippi law. The backbone of PowerTrain's claims against Ma is the allegation that Ma's actions proximately caused PowerTrain to incur civil penalties and damages in the EPA action. *See, e.g.*, PowerTrain's Am. Compl. [83] ¶¶ 14, 27, 33–38; 40, 42,

44–45, 51. The United States filed suit against PowerTrain for EPA violations on May 29, 2009, and the Court entered a consent decree/judgment against PowerTrain on May 9, 2011 for civil penalties in the amount of $2,000,000 plus interest and ordering PowerTrain to export or permanently destroy the certain engines that were in violation of federal law and implement an emission off-set project. The Court finds that PowerTrain's claims accrued at the earliest on May 29, 2009, when the United States filed suit against PowerTrain for the EPA violations. Because PowerTrain filed the instant suit on May 3, 2011, PowerTrain's claims are not time-barred under Mississippi law.

Finally, with respect to the merits issue, in reviewing the motion for summary judgment, response in opposition, reply, corresponding briefs, and authorities, the Court finds that numerous genuine disputes of material fact exist which preclude summary judgment on PowerTrain's claims, including those factual disputes concerning Ma's level of involvement with Best Machinery & Electrical, Inc., specifically, whether Ma was only an employee of Best Machinery & Electrical, Inc. or whether she managed the entire operation. Therefore, Ma's motion for summary judgment [211] must be denied. PowerTrain's claims against Ma survive summary judgment.

### E. Conclusion

For all of the foregoing reasons, Counterdefendant PowerTrain, Inc.'s motion for summary judgment [202] is GRANTED; Counterplaintiff Joyce Ma's counterclaims are DISMISSED; and Defendant Joyce Ma's motion for summary judgment [211] is DENIED. The instant case shall proceed to trial.

An order in accordance with this opinion shall issue this day.

THIS, the 11th of August, 2014.

_____
SENIOR JUDGE